UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUTH HOPE HAMILTON,

           Plaintiff,           Civil Action No. 17-11551
                                        Honorable Gershwin A. Drain
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [15, 17]**

Plaintiff Ruth Hope Hamilton ("Hamilton") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #15, 17), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Hamilton is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #17**) be **GRANTED**, Hamilton's Motion for Summary Judgment (**Doc. #15**) be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II. REPORT

### A. Background

Hamilton was 47 years old at the time of her application date of November 5, 2013, and at 5'1" tall weighed approximately 135 pounds. (Tr. 156, 160). She completed eighth grade, attending special education classes, but had no further education. (Tr. 161). Between May 1994 and April 2002, Hamilton worked sporadically as a childcare provider and housekeeper, before she stopped working, allegedly because of her medical conditions. (Tr. 161-62). She now alleges disability primarily as a result of carpal tunnel syndrome, knee pain, gastritis, depression, nausea, and insomnia. (Tr. 160, 185).

After Hamilton's application for SSI was denied at the initial level on January 24, 2014 (Tr. 80-83), she timely requested an administrative hearing, which was held on November 18, 2015, before ALJ Patricia McKay (Tr. 26-60).[1] Hamilton, who was represented by attorney Randy Calvin, testified at the hearing, as did vocational expert Judith Findora. (*Id.*). On January 26, 2016, the ALJ issued a written decision finding that Hamilton is not disabled under the Act. (Tr. 12-21). On March 16, 2017, the Appeals Council denied review. (Tr. 1-3). Hamilton timely filed for judicial review of the final decision on May 15, 2017. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Hamilton's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

---

[1] Hamilton first appeared for an administrative hearing on June 1, 2015; however, her attorney requested (and was granted) an adjournment to obtain additional medical evidence. (Tr. 61-69).

2

B.      The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Hamilton is not disabled under the Act. At Step One, the ALJ found that Hamilton has not engaged in substantial gainful activity since November 5, 2013 (the application date). (Tr. 14). At Step Two, the ALJ found that she has the severe impairments of moderate depressive disorder with anxiety, esophageal ulcer with Osler's esophagus and gastroesophageal disorder ("GERD"), history of carpal tunnel syndrome (status post release on the right), osteoarthritis of the knees, and asthma. (*Id.*). At Step Three, the ALJ found that Hamilton's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 15).

The ALJ then assessed Hamilton's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: can occasionally climb stairs, crouch, crawl, kneel, stoop, and bend, but must avoid workplace hazards such as dangerous, moving machinery and unprotected heights (so no climbing of ladders, ropes, or scaffolding); must avoid continuous exposure to pulmonary irritants; can occasionally reach overhead with her upper extremities; can frequently use her dominant right upper extremity for grasping/gross manipulation and occasionally use her non-dominant left upper extremity for grasping/gross manipulation; can frequently use foot controls with her left lower extremity; and, mentally, she is limited to work that is simple and routine and which is considered low stress (e.g., self-paced/piece work, not work in a production-rate environment). (Tr. 16).

At Step Four, the ALJ found that Hamilton has no past relevant work. (Tr. 19). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Hamilton is capable of performing the jobs of cashier (700,000 jobs nationally), administrative support worker (300,000 jobs), and information clerk

(90,000 jobs). (Tr. 20). As a result, the ALJ concluded that Hamilton is not disabled under the Act. (*Id.*).

  C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all

evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

D. Analysis

As set forth above, the ALJ determined that Hamilton has the RFC to perform a limited range of simple, light work. (Tr. 16). In her motion, Hamilton argues that the ALJ's RFC finding is not supported by substantial evidence.[2] (Doc. #15 at 11). The Court disagrees.

To begin with, the ALJ thoroughly explained the rationale for her RFC determination, discussing and citing the objective medical evidence of record that related to each of the limitations she imposed. (Tr. 17-18). Specifically:

- The ALJ found that Hamilton is limited to light work exertionally due to her "abdominal issues with her esophageal ulcer with Osler's esophagus and GERD[.]" (Tr. 17). This limitation is supported by the medical evidence. For example, Hamilton's medical records indicate that, in late 2012 and early 2013, she presented to the emergency room with nausea and vomiting on a few occasions. (Tr. 244-46, 250-55). In October 2013, she returned to the emergency room with stomach pain and vomiting, and a small ulcer was found. (Tr. 226). She was prescribed Prilosec and referred to a gastroenterologist. (Tr. 268).

---

[2] In addition to challenging the ALJ's RFC finding, Hamilton argues that the ALJ erred in ignoring the "qualifying" Listing 3.03 (Asthma). (Doc. #15 at 11). This argument misses the mark. To begin with, the ALJ did not ignore this Listing; rather, she expressly found that Hamilton's impairments did not meet or medically equal Listing 3.03 (Tr. 15), and Hamilton has not challenged this finding. Where it is Hamilton's burden to show that she meets or medically equals a listed impairment, and she has failed to point to any evidence even suggesting that her impairments satisfy Listing 3.03, remand is not warranted. *See Krull v. Comm'r of Soc. Sec.*, 2016 WL 8451412, at *10 (E.D. Mich. Dec. 21, 2016) ("A claimant's failure to specifically detail, in a point-by-point fashion, how he or she meets a listing waives that argument."). Moreover, even a cursory review of Hamilton's medical records makes clear that her respiratory functioning was generally normal and, thus, Listing 3.03 was not met or medically equaled. (*See, e.g.,* Tr. 224, 229, 268, 286, 308, 362, 381, 411, 427).

Hamilton's primary care physician, Shelia Singleton, M.D., noted that Hamilton had returned to the emergency room in January 2014 with nausea and vomiting, but a scope was negative. (Tr. 311). At her next visit to Dr. Singleton, in April 2014, Hamilton reported that her GERD was stable and she had experienced no more nausea or vomiting. (Tr. 307). It was more than one year later, in June 2015, before Hamilton reported any additional noteworthy GERD symptoms; at that time, she presented to the emergency room after an anxiety attack caused her to hyperventilate and for her esophageal pain to flare up. (Tr. 370). By the time she arrived at the hospital, however, this issue had resolved. (*Id.*). In November 2015, she again presented to the emergency room with abdominal pain, nausea, and vomiting; tests were normal, however, and she was discharged after receiving IV fluids and medication. (Tr. 426-36).

- The ALJ further concluded that Hamilton must avoid continuous exposure to pulmonary irritants "for her asthma, which is stable[.]" (Tr. 17 (citing Tr. 257)).

- Next, the ALJ determined that – as a result of her limp, low back pain, hip pain, and osteoarthritis in her knees – Hamilton must avoid working around hazards (such as dangerous, moving machinery or unprotected heights), so she is precluded from climbing ladders, ropes, or scaffolding, but can occasionally climb stairs, crouch, crawl, kneel, stoop, or bend. (Tr. 17). The medical evidence indicates that on January 6, 2015, Hamilton complained of left knee pain, saying she had felt a "pop" or "snap" several weeks earlier but that the pain was "slowly improving." (Tr. 358). A medial meniscal tear was suspected. (*Id.*). Two weeks later, when only "marginal improvement" was noted, an MRI was ordered. (Tr. 357). At a follow-up visit in April 2015, however, it was noted that Hamilton's insurance would only cover an MRI if she tried physical therapy first. (Tr. 355). Thus, she did so, and, in May 2015, Hamilton reported that her knee pain was "slowly improving" with physical therapy. (Tr. 353).

- The ALJ also found that Hamilton can occasionally reach overhead with her upper extremities due to her stated right shoulder pain; can use her right dominant upper extremity on a frequent basis for grasping or gross manipulation due to her history of carpal tunnel syndrome status post release on the right; and can use her left non-dominant upper extremity on an occasional basis for grasping or gross manipulation for history of carpal tunnel syndrome with no release on the left. (*Id.*). These limitations are supported by the record evidence. As the ALJ noted, Hamilton reported right shoulder pain on April 28, 2014, and Dr. Singleton advised her to gradually do range of motion exercises. (Tr. 18 (citing Tr. 307-09)). By the time of a June 2015 emergency room visit, however, Hamilton's extremities were non-tender, with normal range of motion. (Tr. 372). Similarly, in September 2015, she had normal strength and range of motion in the extremities. (Tr. 400).

- The ALJ further limited Hamilton to only frequently use of foot controls with her left lower extremity due to left knee and hip pain. (*Id.*). As the ALJ noted, on June 20, 2015, Ryan Gregg, D.O. performed a consultative physical examination

7

of Hamilton. (Tr. 17, 18-19 (citing Tr. 285-94)). Dr. Gregg noted that Hamilton reported osteoarthritis affecting the left knee, as well as a torn ligament in that knee (although she was "unable to describe which ligament was injured"). (Tr. 285). On examination, there was crepitus in the left knee but intact range of motion. (Tr. 286). Dr. Gregg opined that Hamilton could perform only frequent operation of foot controls with the left foot because of this left knee instability. (Tr. 291).

- Finally, the ALJ limited Hamilton to work that is simple and routine in nature, as a result of her eighth grade education and moderate depressive disorder, and "low stress," due to her anxiety. (Tr. 17). Medical records cited by the ALJ indicate that Hamilton's depression and anxiety were consistently characterized as stable (Tr. 257-59, 264-69), and she did not treat with a psychiatrist or psychologist during the relevant time period.

In light of all of this medical evidence, Hamilton first asserts that the ALJ's RFC finding is "defective" because it "completely ignores and/or makes no mention of" her hearing testimony. (Doc. #15 at 11). As an initial matter, this is simply incorrect, as the ALJ specifically discussed Hamilton's testimony in her decision (Tr. 17) and found that Hamilton's subjective complaints were not entirely credible (Tr. 18). Hamilton does not challenge the ALJ's credibility finding, however, so any such challenge is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted). Moreover, because Hamilton has failed entirely to elaborate on what additional limitations the ALJ should have included in the RFC finding, she cannot show that the ALJ erred in evaluating her testimony. *See Berry v. Comm'r of Soc. Sec.*, 2016 WL 7664225, at *11 (E.D. Mich. Dec. 8, 2016) ("Berry gives no indication what additional restrictions might be necessary to accommodate his conditions, but merely mentions the possibility that the ALJ *could have* included more restrictive limitations in his RFC assessment …. Instead, he leaves it to the Court to determine which further restrictions might be appropriate. Berry's underdeveloped argument should be found waived." (citing *McPherson*, 125 F.3d at 995-96)).

Hamilton also challenges the ALJ's Step Five determination, asserting that the vocational expert ("VE") failed to explain "how [she] came to her determination[.]" (Doc. #15 at 11). Again, however, Hamilton is incorrect. The VE clearly explained at the hearing that she based her testimony on her own professional experience, as well as the Dictionary of Occupational Titles, and there was no challenge to this testimony from Hamilton's counsel at the hearing. (Tr. 57). Thus, it was entirely appropriate for the ALJ to rely on the VE's testimony in determining what jobs Hamilton is capable of performing, and the Court finds no error. *See Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995) (an ALJ is entitled to "rely solely on the vocational expert's testimony," even where that testimony is not based on the Dictionary of Occupational Titles); *Zorn v. Comm'r of Soc. Sec.*, 2015 WL 5545257, at *4 (E.D. Mich. Sept. 18, 2015) ("it was the responsibility of the Plaintiff's attorney, not the ALJ, to question the VE on their assessment" and failure to do so constitutes waiver).[3]

Finally, Hamilton argues that the ALJ "failed to list which jobs" she was relying on from the VE's testimony or explain how Hamilton could perform those positions with her restrictions. (Doc. #15 at 13). This too is incorrect: the ALJ specifically listed in her decision the jobs she concluded Hamilton could perform, including cashier, administrative support worker, and information clerk. (Tr. 20). Moreover, the ALJ was not required to explain how Hamilton could perform these positions, as she properly relied upon the VE's testimony that someone with the identified limitations could perform these three jobs. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004) ("This court has held repeatedly that the testimony of a vocational expert identifying specific jobs available in the regional economy that an individual with the

---

[3] Hamilton also argues that the ALJ erred in failing to state "what limitations were placed on the record an[d] adopted by the ALJ while coming to her decision." (Doc. #15 at 11). This argument is easily disposed of: the ALJ clearly set forth the functional limitations she was imposing in both the RFC (Tr. 16) and in the hypothetical question posed to the VE (Tr. 54). Thus, there is no error.

claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step 5 that the claimant can perform other work."). Thus, this argument too is without merit.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #17**) be **GRANTED**, Hamilton's Motion for Summary Judgment (**Doc. #15**) be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

Dated: April 18, 2018  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## **CERTIFICATE OF SERVICE**

       The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 18, 2018.

                                      s/Eddrey O. Butts
                                      EDDREY O. BUTTS
                                      Case Manager